## FLOYD DENZER v. MICHAEL E. PRENDERGAST AND OTHERS.

126 N. W. (2d) 440.

January 17, 1964—No. 38,696.

*Arthur E. Anderson* and *George T. Havel,* for appellants.

*Michael E. McGuire, Joe A. Walters, Thomas A. Keller III,* and *O'Conner, Green, Thomas & Walters,* for respondent.

SHERAN, JUSTICE.

Appeal from an order of the district court denying a blended motion for amended findings or for a new trial.

Action was instituted by Floyd Denzer for the purpose of obtaining a judicial determination that a described 80-acre tract of real estate located in rural Le Sueur County, Minnesota, is exempt from seizure or sale under legal process on account of judgments in favor of defend-

ants Michael E. Prendergast and Loretta Prendergast entered January 12, 1961, and based on verdicts for damages caused by an automobile accident found to have resulted proximately from the negligence of plaintiff.

The essential facts are stipulated. At the time of the entry of the judgment plaintiff was the owner of the remainder in fee subject to his mother's life estate. The interests of both were acquired from plaintiff's father, August E. Denzer, who died in 1951 when plaintiff was 29 years of age and his widowed mother was 73.

Plaintiff, with his family, has lived in the house on the 80-acre tract and cared for his mother under an agreement with the guardian of her estate whereby he worked the 80 and an additional 40 acres owned by her; paid the real estate taxes, insurance, and repairs; and received $100 per month for her care, of which $500 annually was withheld in lieu of cash rent. In 1959 plaintiff discontinued working the land, and it was then leased, except for the buildings, to a third person. At the time of the trial on September 12, 1961, according to the stipulation, plaintiff had a wife and six children and was living with and providing for his mother in the buildings on the farm. Except as stated, he was without a lease and paid no fixed rent.

The trial court found the facts to be as stated and concluded that the realty was not subject to the lien of the judgments since it was plaintiff's homestead.

The question for decision is whether the owner of a remainder in fee subject to a life estate is entitled to the exemption provided by Minn. St. 510.01 where he is in possession of the house on the tract involved under an oral agreement whereby, in exchange for the support and maintenance of the life tenant, he and his family share the occupancy of the home with her and where the land other than the building site has been leased to another by the life tenant.

There is no Minnesota decision directly in point. Whether the exemption was properly claimed depends on the construction to be given the constitutional and statutory provisions exempting the homestead from seizure or sale. Minn. Const. art. 1, § 12, provides:

"No person shall be imprisoned for debt in this state, but this shall

not prevent the legislature from providing for imprisonment or holding to bail, persons charged with fraud in contracting said debt. A reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law. [*Provided, however,* that all property so exempted shall be liable to seizure and sale for any debts incurred to any person for work done or materials furnished in the construction, repair or improvement of the same, and provided further, that such liability to seizure and sale shall also extend to all real property for any debt incurred to any laborer or servant for labor or service performed.]"

The sentence in brackets was added to the constitution of 1857 by amendment adopted November 6, 1888. In rural areas the homestead includes any quantity of land not exceeding 80 acres. Minn. St. 510.02.

Minn. St. 510.01 provides:

"The house owned and occupied by a debtor as his dwelling place, together with the land upon which it is situated to the amount hereinafter limited and defined, shall constitute the homestead of such debtor and his family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing, except such as are incurred for work or materials furnished in the construction, repair, or improvement of such homestead, or for services performed by laborers or servants."

Appellants contend that plaintiff's interest in the farm is subject to seizure or sale under legal process issued pursuant to the judgment because the realty is not "owned and occupied" by him as his dwelling place, and further that a judgment for damages caused by a tort is not a "debt" within the meaning of the quoted statute.

■ It is clear, of course, that plaintiff as owner of the remainder in fee of the 80-acre tract of land upon which the house is situated, subject only to the life estate of his mother, has a present interest in this realty.[1] This interest, however, does not entitle him to possession

---

[1]Beliveau v. Beliveau, 217 Minn. 235, 14 N. W. (2d) 360.

or occupancy while the life tenant lives.[2] Apart from the support agreement, she, as life tenant, is entitled to exclusive possession of the premises until her death.[3] Appellants reason:

"An examination of the statute clearly indicates that the proper construction of the words 'owned and occupied' requires that there be not only ownership but that such ownership give rise to occupancy, concurrent therewith and * * * dependent thereon."

While plaintiff has no right to present occupancy based on his ownership of the remainder in fee subject to the life estate, the house is in fact occupied by him and his family. With respect to the house and the land upon which it is situated, he has ownership and occupancy. The ownership of the fee subject to the life estate and the occupancy concur in time but the occupancy does not spring from the ownership. It is argued, therefore, that plaintiff should not be accorded the statutory exemption in light of early cases containing this language:

"* * * the character of the ownership, or of the estate or interest owned, is not material, so that it gives the right of occupancy—so that there is a concurrence of ownership and occupancy, *the former sustaining the latter.*" (Italics supplied.) Kaser v. Haas, 27 Minn. 406, 408, 7 N. W. 824, 825.

The decisions in which the quoted expression appears do not control this case. The holding of In re Emerson's Homestead, 58 Minn. 450, 60 N. W. 23, is that a tenant for years is entitled to the exemption when in possession during his tenancy. Kaser v. Haas, 27 Minn. 406, 7 N. W. 824, holds that a tenant in common is entitled to the homestead exemption. Wilder v. Haughey, 21 Minn. 101, cited in the Kaser case, declares only that one occupying under a contract for deed is entitled to the exemption. We do not find in these decisions, which extend the exemption, authority for resolving the doubt in this case in appellants' favor. McCarthy v. Van Der Mey, 42 Minn. 189, 44 N. W. 53, also cited by appellants, holds merely that under the law of Minnesota as it existed prior to the enactment of L. 1889, c. 46,

[2]Hanson v. Ingwaldson, 77 Minn. 533, 80 N. W. 702.
[3]Ashbaugh v. Wright, 152 Minn. 57, 188 N. W. 157.

§ 63, et seq., the fee of the homestead of a deceased person, subject to the life estate of the surviving widow, was subject to administration and sale in the probate court.

There is authority from other jurisdictions which supports appellants' claim that the homestead exemption does not operate in favor of the owner of the remainder in fee subject to a life estate even though he be in possession.[4] The constitutional and statutory provisions among the states differ in some respects. In addition, considerations of local public policy are so much involved that these decisions do not have the persuasive effect they might in a different situation.

The decisions of this court reflect a disposition to protect the person claiming homestead exemption as against those asserting the right to reach his assets in satisfaction of claims. A creditor is entitled in justice to be paid, and this is true whether his judgment be based on contract or on tort. The homestead exemption law does not relieve one from his moral and legal obligation to pay what he owes. But experience has taught that in the long run obligations are more likely to be fulfilled by those whose connections with the community are stabilized by a protected interest in a relatively permanent place of abode than by those not so anchored. The result is that just claims of a particular claimant may be deferred or defeated. Nevertheless, review of our decisions, with special attention directed to the more recent ones, shows that the policy of giving the debtor "sanctuary" from just claims in his "homestead" has prevailed with significant uniformity. By way of illustration: In Wilson v. First Nat. Bank, 239 Minn. 550, 60 N. W. (2d) 69, 40 A. L. R. (2d) 894, this court held for the first time that rentals derived from homestead property wholly unoccupied by the owner were exempt by virtue of Minn. St. 510.01 and 510.07. In Holden v. Farwell, Ozmun, Kirk & Co. 223 Minn. 550, 27 N. W.

---

[4]Annotations, 74 A. L. R. (2d) 1368 and 89 A. L. R. 523; 29 C. J., Homesteads, § 156; Cross v. Fruehauf Trailer Co. 354 Mich. 455, 93 N. W. (2d) 233, 74 A. L. R. (2d) 1346; Qualley v. Zimmerman, 231 Wis. 341, 285 N. W. 735; Stombaugh v. Morey, 388 Ill. 392, 58 N. E. (2d) 545, 157 A. L. R. 254. But see, Gibbs v. Hunter, 99 S. C. 410, 83 S. E. 606; Lehman v. Tucker, 176 Okla. 286, 55 P. (2d) 62; Panagopulos v. Manning, 93 Utah 198, 69 P. (2d) 614.

(2d) 641, it was held that where one of several matured debts was secured by a *mortgage on the homestead* a payment made by the debtor should be applied on the mortgage debt, even though the other debts were unsecured and Minnesota generally follows the rule that in the absence of a specific appropriation of payments by the parties the court will apply them to the unsecured or least secured debts in preference to those secured or more adequately secured. In Cysewski v. Steingraber, 222 Minn. 221, 24 N. W. (2d) 266, the homestead exemption was applied not only to a house of which the debtor had had minimal occupancy, but also a fourplex included within the prescribed area for homestead exemption in municipalities. We also note Gussman v. Rodgers, 190 Minn. 153, 251 N. W. 18, where the claim of a judgment debtor to a homestead exemption for a lake cottage was respected where there was evidence to establish that it was furnished for housekeeping and living, had kitchen and heating coal stoves, and was used more than 6 months each year.

The overriding policy sought to be served by the homestead exemption was clearly expressed by Mr. Chief Justice Wilson in Ryan v. Colburn, 185 Minn. 347, 350, 241 N. W. 388, 389, decided in 1932, where the judgment creditor claimed that plaintiff should not be afforded the exemption because she had entered into possession of the real estate involved without a building permit and in violation of state statute. He wrote:

"* * * The homestead law is to be liberally construed. It would not be wholesome to construe the statute as conserving lawful homes only. To do so would tend to increase the burdens of the community chest; destroy homes, divide families; and increase the population of our orphan asylums. We construe our homestead law as relating to all debtors. It does not prescribe personal qualifications touching the moral character of the debtor; and upon principle and reason we see no justification for excluding from its protection the vicious, the criminal, or the immoral. All must live, and right consideration should contemplate not only the living but the next generation. This statute rests upon the thought of family. Our established policy is not restricted

to right-thinking or right-acting persons; but sounds in hope for the future both as to the debtor and his children."

We are satisfied that in close cases like this one the test to be used in determining whether the house is "owned and occupied" by the debtor should be whether the ownership and occupancy affords a community connection of such significance as to give reason to believe that the preservation of that connection will in the long run make the debtor and his family better able to fulfill their social obligation to be self-sustaining. Considered in this light, we believe that the determination of the trial court that the homestead exemption should apply in the instant case is in conformity with the purpose and object of the constitutional provision and the statutes passed pursuant to it. The owner in fee of this real estate subject only to the life estate of his aged mother has an interest which ties him to the community at least as much as the interests of a tenant for years, a tenant in common, and a vendee under a contract for deed. Even so, the exemption laws will not give him protection in the absence of possession. It could be argued that the casual and permissive presence of the owner of the remainder in fee on real estate, even though he be entitled to possession upon termination of the life estate, fails to bespeak that degree of permanent attachment which will give reason for thinking that he will in time fulfill his financial obligations. But where, as in this case, the possession of the home has been continuous over a period of approximately 10 years and is a consequence of an agreement to support and maintain the life tenant, and where there is an absence of evidence to indicate that the arrangement, although oral and for no fixed term, is likely to be discontinued, we feel that the policy of the constitutional and statutory provisions pertaining to homestead exemption justifies, if it does not require, the determination which we now make that under the facts of this case the 80-acre tract involved constitutes the homestead of the plaintiff.

It is recognized that except for the building site plaintiff was not in possession of the entire tract when the action was instituted. The land was being worked by his mother's tenant. The emphasis of the statute, however, is that the *"house"* be "owned and occupied by a debtor as

his dwelling place." If it is, the "land upon which it is situated" becomes, together with the house, the "homestead of such debtor and his family." We believe that the extension of the exemption to the entire 80-acre tract follows from the phraseology of the statute and from the policy of the law, as we conceive it to be, of preserving for a debtor to the extent of the area prescribed by the statute his interest not only in the home, but also the adjoining realty in which he has a present interest.

■ Appellants argued that the constitutional provision and the statute do not apply to judgments based on tort and direct our attention to a number of Minnesota cases which, it is contended, give at least inferential support to this position.[5] None deal specifically with the problem before us. However, language used in some instances supports their claim.[6] The fact that in the revision of 1905[7] the limiting clause "on account of any debt not lawfully charged thereon in writing" now appearing in the statute was employed for the first time,[8] and that the words "or liability" appearing in the second sentence of Minn. Const. art. 1, § 12, are not included in the statutory phrase lead appellants to the contention that the legislature intended to distinguish between an obligation to pay money arising from contract, express or implied, and that arising from a judgment for damages caused by a

---

[5]Tuttle v. Strout, 7 Minn. 374 (465); Cogel v. Mickow, 11 Minn. 354 (475); Coleman v. Ballandi, 22 Minn. 144; State ex rel. Johnson v. Becht, 23 Minn. 1; Hurd v. Hurd, 63 Minn. 443, 65 N. W. 728; Flint v. Luhrs, 66 Minn. 57, 68 N. W. 514; Hughes v. Mullaney, 92 Minn. 485, 110 N. W. 217; State v. Wiebke, 154 Minn. 61, 191 N. W. 249; Olson v. Dahl, 99 Minn. 433, 109 N. W. 1001, 8 L. R. A. (N.S.) 444; Aase v. Langston, 175 Minn. 161, 220 N. W. 421; American Ry. Exp. Co. v. Houle, 169 Minn. 209, 210 N. W. 889, 48 A. L. R. 1266; Dimke v. Finke, 209 Minn. 29, 295 N. W. 75; Renville State Bank v. Lentz, 171 Minn. 431, 214 N. W. 467; Keys v. Schultz, 212 Minn. 109, 2 N. W. (2d) 549; Wojahn v. Halter, 229 Minn. 374, 39 N. W. (2d) 545.

[6]State ex rel. Johnson v. Becht, *supra*; Wojahn v. Halter, *supra*.

[7]See, R. L. 1905, § 3452.

[8]G. S. 1894, § 5521, provided merely that the homestead should not be subject to attachment, levy, or sale upon exercise of any process issued out of any court in this state.

wrong. The legislature, however, was under a constitutional mandate to exempt a reasonable amount of property from seizure or sale for the payment of "any debt or liability."[9] These words as of 1905 had been construed to mean "debts or liabilities of every kind or description, without exception."[10] The exceptions to art. 1, § 12, made in 1888 by the constitutional amendment were made because of and in deference to these decisions. Although appellants argue persuasively that considerations of public policy call for a different treatment of obligations based on express or implied contract and those based on damages caused by negligence, we do not think the legislature intended to, or could, make property exempt from satisfaction of one class of obligations and not the other in view of the language of the constitution as construed by this court.

Two of our decisions where exemption was upheld are premised on assumptions in accord with this conclusion. In Cysewski v. Steingraber, 222 Minn. 221, 24 N. W. (2d) 266, the judgment involved was for damages for personal injury caused by negligence. In Johnson v. Brajkovich, 229 Minn. 529, 40 N. W. (2d) 273, the judgment involved was for damages caused by the wrongful detention of realty. Whether such a distinction could be made with respect to judgments for damages designed to punish rather than compensate is a problem not before us and need not be decided.

We conclude that the interest of plaintiff in the realty here involved, as described in the stipulation of facts, was exempt from seizure or sale for the judgments against plaintiff, and that the order appealed from must be and is affirmed.

Affirmed.

---

[9]Minn. Const. art. 1, § 12.

[10]Tuttle v. Strout, 7 Minn. 374 at 376 (465 at 468); Cogel v. Mickow, 11 Minn. 354 (475); Coleman v. Ballandi, 22 Minn. 144.