## FISHER v. FISHER.

1. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—INFERENCES—STATUTES.

   To warrant exclusion of testimony as to matters equally within knowledge of deceased, under statute, disqualification must clearly appear and not be matter of inference (3 Comp. Laws 1929, § 14219).

2. SAME—INSURANCE—CHANGE OF BENEFICIARY.

   In suit by children to be declared beneficiaries under father's policy, where it appears that insured wrote to insurer to change beneficiary from wife, from whom he was separated, to plaintiffs, children by former marriage, but that change was not made because policy was not sent in, as required, testimony by one of plaintiffs as to conversation between him

and insured's wife, in insured's presence, relating to her refusal to surrender policy, in explanation as to why it was not 'sent in, *held*, properly admitted; statute prohibiting admission of testimony as to matters equally within knowledge of deceased not being applicable (3 Comp. Laws 1929, § 14219).

McDONALD, C. J., dissenting.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted November 2, 1932. (Docket No. 103, Calendar No. 36,704.) Decided March 2, 1933.

Bill by Edward J. Fisher and others against Caroline L. Fisher and Bankers Life Company, a corporation, to recover the proceeds of a life insurance policy. Cross-bill by defendant Fisher for declaration as beneficiary. Bill of interpleader by defendant corporation. Decree for plaintiffs. Defendant Fisher appeals. Affirmed.

*Ronald M. Ryan* and *Horace M. Mechem,* for plaintiffs.

*Mustard, Mustard & Waterman,* for defendant Fisher.

McDONALD, C. J. (*dissenting*). This bill was filed to recover the proceeds of a life insurance policy issued by the Bankers Life Company on the life of Robert G. Fisher, deceased, and payable to Caroline L. Fisher, his wife.

Mr. and Mrs. Fisher separated by mutual consent, and were living apart at the time of his death, but were not divorced. After their separation, Mr. Fisher attempted to change the beneficiary named in the policy to the plaintiffs, who are children by a former wife. In changing beneficiaries it was required that written notice from the insured be filed

in the home office of the company, accompanied by the policy for indorsement. The company received the written notice but not the policy. The change in beneficiaries was not made. On the death of the insured, the plaintiffs claimed the insurance as beneficiaries and brought suit to enforce their claim. The insurance company filed its answer and a bill of interpleader, paid the proceeds of the policy into court and was discharged.

The plaintiffs' bill was filed on the theory that the insured did all he could to secure a change in beneficiaries but was frustrated in his efforts by Caroline L. Fisher, the original beneficiary, who had possession of the policy and refused to deliver it to him. In answer, Mrs. Fisher says that the policy was given to her by the insured and that he never afterwards requested that she return it.

These allegations and denials by the parties present the only issue in the case. The trial court determined it against the defendant, and entered a decree in favor of the plaintiffs. The defendant has appealed.

1. As cause for appeal, the defendant contends that the trial court erred in receiving and considering as competent evidence a conversation between the insured, his son, Edward J. Fisher, one of the plaintiffs, and Caroline L. Fisher, the defendant, concerning the refusal of the defendant to surrender the insurance policy.

The question arose when Edward J. Fisher was testifying for the plaintiffs. On direct examination he was asked to relate a conversation he heard between Caroline L. Fisher and the insured in regard to the insurance policy. He answered:

"The only thing was, after we got the stuff loaded, he says, 'I will go in and get my papers.' Well, he

went in the house to get the papers and came on out and says, 'Well, she would not give me the insurance policy.' I says to her 'Why don't you give him what belongs to him and you leave him alone and he will leave you alone?' and she told me to mind my own damn business.''

This testimony was received over defendant's objection that it was prohibited by the statute concerning matters equally within the knowledge of the deceased (3 Comp. Laws 1929, § 14219).

The witness and Caroline L. Fisher, the defendant, were opposite parties in interest in this litigation. They were both assigns within the meaning of the statute. Both are protected parties and neither may testify to matters equally within the knowledge of the deceased who was their common assignor.

In Perkins, Evidence by Survivor, p. 117, § 85, the author says:

''Where, by the terms of the policy or certificate the assured has the right to change the beneficiary and has done so, the first-named beneficiary is not a competent witness against the second or last. * * * The question has generally arisen when the first-named beneficiary has attempted to testify. That such beneficiary is incompetent admits of no doubt. But the same rule must be applied to the second or last-named beneficiary should the occasion require it.''

The plaintiffs rely on *Wright* v. *Wilson,* 17 Mich. 192, as upholding the competency of this testimony. That case has no application. It arose under the original act (No. 125) of 1861, which did not protect the assigns of a deceased. It was not until the amendment (Act No. 155) of 1875, that protection was extended to heirs, assigns, devisees, and legatees.

2. It is contended that the trial court erred in refusing to receive in evidence a statement made by the insured, not in his wife's presence, that she had refused to surrender the policy.

The plaintiffs offered to prove by Carl A. Corey and W. R. Miller, who, as witnesses, signed the application for change of beneficiaries, that the insured stated to them he could not get his wife to surrender the policy. The court excluded the testimony on the ground that the statement was self-serving, made for his own benefit against the interest of the beneficiary who was not present, and therefore was inadmissible as evidence under the hearsay rule. The plaintiffs contend that the testimony was admissible for two reasons, first, because the statement was a declaration against the interest of the insured; and, second, that it was a part of the *res gestæ*.

The statement by the insured was not against his interest. It was in his favor and of the plaintiffs, his assigns; and against the interest of the defendant, an adverse party. That such a statement in favor of the party making it and adverse to the interest of another who is not present is inadmissible as evidence is too well understood to require citation of supporting authorities. It is mere hearsay unless it may be considered a part of the *res gestæ*.

To be a part of the *res gestæ* a declaration must be made contemporaneously with the main fact which in this case was the defendant's refusal to surrender the policy; or it must be so closely attached to the main fact as to derive some credit from it. If it is so detached from the fact in dispute that its credit depends entirely on the person who makes it, it is not a part of the *res gestæ*. If not

made contemporaneously with the main fact, it must be so near the time and circumstances that the mind of the declarant is yet actively influenced by it. It must be spontaneous and unreflecting. It has been said that it must be the "mind's impressions of immediate events and not a narrative of past happenings," "the facts talking through the party" and not the party "talking about the facts." See McKelvey on Evidence (Hornbook series), p. 405, § 214; Jones Commentaries on Evidence (Horwitz Ed.), pp. 352, 353; *Rogers* v. *Railway Co.,* 187 Mich. 490.

Measured by the tests applied by the courts and text-book writers, the statement in question was not a part of the *res gestæ.* It was not made contemporaneously with the main fact or so closely in connection therewith as to derive credit from it. It was a mere recital of what had previously taken place between him and the defendant, an abstract statement depending entirely for its truth on the credit of the party who made it. It was not a part of the *res gestæ.*

3. It is contended by the plaintiffs that, excluding the testimony of Edward J. Fisher and the two witnesses to the application for a change of beneficiaries, the facts and circumstances are sufficient to raise the presumption that defendant would not have surrendered the policy if she had been requested to do so; and that, therefore, the insured did all he could have done to secure the policy and present it to the company for indorsement of the change in beneficiaries.

The facts relied on to support this presumption are that insured and defendant had separated; that they had made a property settlement, and that the insured had "advertised her in the Moon-Journal." These facts are not sufficient to justify the presump-

tion that defendant, if requested, would not have surrendered the policy.

As such a presumption cannot be reasonably indulged in from the conceded facts, it is not necessary to consider its effect on the rights of the parties. The plaintiffs alleged that the policy could not be changed because of the wrongful act of the original beneficiary in refusing to surrender it on demand. The defendant made denial in her answer and cross-bill. The burden of proof was with the plaintiffs to prove the facts alleged. Eliminating the incompetent testimony, there is a total absence of such proof. We are therefore constrained to hold that, on this record, the original beneficiary, Caroline L. Fisher, is entitled to the proceeds of the policy.

The decree should be reversed, with costs to the defendant.

Sharpe, J. It is conceded that the deceased, on July 8, 1931, executed, on a form furnished to him by the insurance company, an instrument for the purpose of changing the beneficiary named in his policy from Caroline Fisher (hereafter called the defendant) to Pearl Fisher, Myrtle Sanborn, Edward J. Fisher, and H. J. Fisher, and that this instrument was received by the company on July 30, 1931, and a notation made thereon, "Policy not received; file for any legal effect it may have."

In *John Hancock Mutual Life Ins. Co.* v. *Jedynak,* 250 Mich. 88, 90, it was said:

"It is well settled that if the insured wanted to change the beneficiaries and endeavored, in a writing signed by her, to accomplish such purpose, and was only prevented by the original beneficiary refusing to turn over the policy and the declination of the insurer to grant her written request without pro-

duction of the policy, a court of equity will accomplish the clear purpose of the insured and frustrate contrary designs.''

Plaintiffs sought to prove that the defendant refused to turn over the policy to the deceased by the testimony of Edward J. Fisher, one of the beneficiaries named in the instrument sent to the insurance company. In my opinion, the trial court committed no error in admitting this testimony and in finding that the omission of the deceased to send the policy to the company was due to the refusal of defendant to deliver it to him. It is undisputed that the deceased and defendant were husband and wife and that they had separated. He went to his home to get his personal effects, and the question asked defendant by Edward, ''Why don't you give him (his father) what belongs to him and you leave him alone and he will leave you alone?'' and her answer thereto that he should mind his own business occurred at that time. While the deceased was then present and doubtless heard the question asked and the answer thereto, in my opinion the statute (3 Comp. Laws 1929, § 14219) did not render it inadmissible. This statute, which prevents opposite parties from testifying as to matters which, if true, were equally within the knowledge of the deceased, has been in force for many years in this State. It was considered by Justice CHRISTIANCY in *Wright v. Wilson,* 17 Mich. 192, 201 (decided in 1868). It was there said:

''But the principal object of this prohibition, we think, was to prevent a living party from obtaining an unequal advantage, from his own testimony, upon matters known only to himself and the deceased, or better known to them than to others, and of which the deceased party can, of course, no longer speak.''

This statement was quoted with approval in *Downey* v. *Andrus,* 43 Mich. 65, 71. While the word "assigns" did not then appear in the law, its later inclusion cannot well be said to affect its purpose as therein stated.

Statutes enacted for the same purpose have been construed in a similar manner in other States. In *Wadsworth* v. *Heermans,* 85 N. Y. 639, 641, it was said that:

"The spirit and purpose of this provision of the code (section 829) is equality, to prevent undue advantage; and that purpose should be kept in view when border questions arise and lines of distinction are to be drawn."

In *First Nat'l Bank* v. *Warner,* 17 N. D. 76, 80 (114 N. W. 1085, 1086, 17 Ann. Cas. 213), it was said:

"The reason of the rule laid down in said section is to protect the estates of decedents from false testimony which attributes to a deceased party statements or acts concerning which he cannot testify by reason of his death. A transaction, as used in this section, means a transaction in which the decedent took part and was a party to and participated in."

It has also been said that "To warrant the exclusion, the disqualification must clearly appear and not be a matter of inference." 1 Abbott's Trial Evidence (4th Ed.), p. 114.

We have discovered no authority directly in point. The cases cited and relied on by defendant (*Wallace* v. *Fraternal Mystic Circle,* 127 Mich. 387; *Great Camp K. O. T. M.* v. *Savage,* 135 Mich. 459; *Shepard* v. *Shepard,* 164 Mich. 183; and *Perfect Cleaners & Dyers* v. *Kirschbaum,* 257 Mich. 430) all refer to statements made by deceased on which rights were sought to be founded. In this case no reliance is

placed upon any such statement. That which is relied upon to prove that defendant refused to deliver the policy to the deceased is her answer to a question put to her by Edward. While made in the presence of the deceased, I can see no reason for the application of the statute to its admission. The deceased, while present, took no part in the conversation. Its purpose was to account for the failure of the deceased to forward the policy to the company with his request for a change of beneficiary.

The decree is affirmed, with costs to appellees.

CLARK, POTTER, NORTH, WIEST, and BUTZEL, JJ., concurred with SHARPE, J. FEAD, J., did not sit.